IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMBER POINT PROPERTIES III, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-3449-CV-S-DGK |
| | ) | |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This lawsuit is a dispute over who has the superior claim to a lot and house in Branson, Missouri. Plaintiff Timber Point Properties III, LLC ("Timber Point") owned real property that was sold in a foreclosure orchestrated by non-party U.S. Bank, N.A. ("U.S. Bank") and Defendants Bank of America, N.A. ("Bank of America"), Millsap & Singer, P.C., and Millsap & Singer, LLC (collectively, "the Millsap entities").

In a previous order, the Court granted Timber Point's motion for leave to amend its complaint. However, the Court noted that it would later sua sponte evaluate the newly filed complaint under Federal Rule of Civil Procedure 12(b)(6) both to move this litigation along and to give due consideration to the arguments in Defendants' previously filed motions to dismiss that were dismissed as moot when the Court allowed Timber Point to amend its complaint.

For the reasons stated below, Counts I, II, III, IV, and V of the complaint are sua sponte DISMISSED in whole or in part as described below.

### Standard of Review

After defendants in an action have been served, the court may determine on its own motion whether the complaint states claims upon which relief can be granted. *See Boyd v. Smith*,

945 F.2d 1041, 1042–43 (8th Cir. 1991) (recognizing such a power in the district courts). The court's inquiry is the same as if a defendant had moved under Rule 12(b)(6) to dismiss the complaint.

A complaint must meet two conditions to survive a Rule 12(b)(6) motion. First, it must "contain sufficient factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, the complaint must state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.* Determining the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In resolving a motion to dismiss, the court generally looks only at the complaint, which it construes liberally. *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014). However, the court may consider materials that are part of the public record or that are "necessarily embraced by the pleadings." *Id.*

When a court dismisses a complaint under Rule 12(b)(6), the dismissal should ordinarily be without prejudice. *Michaelis v. Neb. State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983). However, where a litigant has been given "ample opportunities" to properly plead its claims, and where the pleading's deficiencies "cannot be cured by re-pleading, because [the claims fail] as a

matter of law," dismissal with prejudice may be appropriate. *Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1019 (D. Minn. 2014). A court may dismiss a claim with prejudice even if its inquiry was sua sponte. *See, e.g.*, *Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.*, 758 F.3d 1038, 1042 (8th Cir. 2014).

**Background**

Applying the above standard, the Court finds the following facts to be true:

In December 2006, Ryan McKinney ("McKinney") purchased real property in Branson, Missouri ("the Property"). McKinney executed a promissory note ("the Note") with lender First Franklin, a Division of National City Bank ("First Franklin").[1] The Note was secured by a deed of trust ("the Deed of Trust") on the Property, which named Lincoln-Evans Land Title Company as the trustee, McKinney as the borrower, and the Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the beneficiary, First Franklin, and First Franklin's "successors and assigns" (Doc. 108-2, at 2). First Franklin recorded the Deed of Trust.

Over the next few years, parties to the Deed of Trust were substituted. In 2011, MERS assigned First Franklin's interest to holders of the Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FF2 (the "Series 2007-FF2 Trust"). U.S. Bank was the trustee for the Series 2007-FF2 Trust. Timber Point maintains this trust does not actually exist. Regardless, the Series 2007-FF2 Trust appointed Millsap & Singer, P.C. successor trustee in March 2013. (Defendant Millsap & Singer, LLC is Millsap & Singer,

---

[1] The Third Amended Complaint implies the Note does not exist. Drawing on its "judicial experience and common sense," the Court finds claims flowing from this allegation to be implausible. *See Iqbal*, 556 U.S. at 679. It very unlikely First Franklin would loan such a large amount of money to McKinney without drawing up a promissory note. Moreover, the Third Amended Complaint consistently shows that the rest of the parties have acted at all relevant times as if the Note existed, suggesting that it does in fact exist. Thus, the Court rejects Timber Point's allegation that McKinney and First Franklin may not have executed a promissory note. *See id*. at 678–79.

In reaching this decision, the Court did not consider an exhibit that Bank of America claims is a copy of the Note (Doc. 91-1). The exhibit is neither part of the complaint nor fairly embraced by the complaint.

3

P.C.'s counsel.) Bank of America has consistently claimed in this litigation that it was assigned the Note in 2012, but Timber Point alleges that never happened.

In May 2013, Dan and Alicia White ("the Whites") obtained a judgment lien against the Property. The Whites are the constituent members of Timber Point. To satisfy the Whites' judgment debt and execute the Whites' lien, McKinney conveyed the Property to Timber Point by quitclaim deed in July 2013.

In October 2013, the Millsap entities notified Timber Point that Bank of America owned the Note and would sell the Property in foreclosure to recover that debt. The next month, Millsap & Singer, P.C. non-judicially foreclosed on the Property, which was purchased by U.S. Bank on behalf of the Series 2007-FF2 Trust. After Timber Point refused to vacate the Property, Millsap & Singer, LLC instituted an unlawful detainer action in Missouri state court to oust Timber Point. *See U.S. Bank Nat'l Ass'n v. McKinney*, No. 14AF-AC00010 (Mo. Cir. Ct. filed Jan. 6, 2014).[2]

Timber Point then sued in this Court to regain full title to the Property, contesting the process that led to the foreclosure. In its most recent Order (Doc. 107), the Court ordered the Clerk to docket Timber Point's Third Amended Complaint. The Court promised to promptly assess the Third Amended Complaint to see if its claims would survive a Rule 12(b)(6) motion.

## Discussion

The Court now determines whether the Third Amended Complaint states claims upon which relief can be granted. The Third Amended Complaint asserts six counts against Defendants, all invoking the federal Declaratory Judgment Act or Missouri's substantive law: (1) declaratory judgment that Timber Point's lien was senior to Bank of America's;

---

[2] A defendant in an unlawful detainer action brought under Missouri law cannot concurrently contest title. *Wells Fargo Bank, N.A. v. Smith*, 392 S.W.3d 446, 453–56 (Mo. 2013). Therefore, the instant title issues were properly reserved for this action.

4

(2) declaratory judgment that Defendants cannot enforce their lien; (3) quiet title; (4) writ of right; (5) fraud against the court; and (6) slander of title. In examining the sufficiency of each count, the Court assimilates arguments the parties have previously made on the record regarding earlier versions of these counts.

> **I. The Third Amended Complaint does not state a claim for a declaratory judgment that Timber Point's lien was senior, but it does for a declaratory judgment that Bank of America had no power to execute the Deed of Trust.**

Under the Declaratory Judgment Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In Counts I and II, Timber Point seeks declaratory judgments on its allegedly paramount interest in the Property. Specifically, Timber Point seeks declaratory judgments that: (I) its security interest was senior to each Defendant's, and (II) even if Bank of America's lien was senior to Timber Point's, Bank of America's lien was not enforceable.

> **A. The Third Amended Complaint fails to allege that Timber Point's lien was senior to Bank of America's lien.**

Count I seeks a declaratory judgment on the relative priorities of the parties' security interests. Two security interests are at issue in this case: First Franklin's Deed of Trust lien and the Whites' judgment lien. To determine these encumbrances' priorities, the Court examines when each was perfected, meaning the interest holder took all legal steps for the interest to become effective against other creditors. *See Black's Law Dictionary* 1318 (10th ed. 2014).

The Court starts with the Deed of Trust. When First Franklin executed the Deed of Trust with McKinney, First Franklin acquired a mortgage lien on the Property. First Franklin recorded this lien in December 2006. In so doing, First Franklin perfected the Deed of Trust and imparted constructive notice of the lien unto all subsequent purchasers and mortgagees. *See* Mo. Rev.

Stat. § 442.390 (stating that if an instrument is recorded, all subsequent purchasers and mortgagees are deemed to purchase with notice).

Timber Point argues that the Deed of Trust was not perfected because it does not identify the actual identity of the mortgagee, as required by Missouri law. *See id.* § 443.035.3. The Deed of Trust identifies MERS as the nominee for First Franklin and First Franklin's "successors and assigns." This language properly identifies the mortgagee as First Franklin; the "successors and assigns" language merely emphasizes that First Franklin had the right to alienate its interest. *See Woods of Somerset, LLC v. Developers Sur. & Indem. Co.*, 422 S.W.3d 330, 334 (Mo. Ct. App. 2013) (deeming contract interpretation a question of law). And the presence of MERS as nominee does not obscure First Franklin's role as mortgagee. Because the Deed of Trust identifies First Franklin as the mortgagee and otherwise complies with the recording statutes, the Deed of Trust was perfected upon recordation in December 2006.

The second relevant interest here belonged to the Whites. When the Whites obtained a judgment debt against McKinney, they acquired a lien against the Property. *See* Mo. Rev. Stat. § 511.350. Judgment liens impart constructive notice when rendered. *Id.* § 511.360; *State ex rel. Mo. Highways & Transp. Comm'n v. Westgrove Corp.*, 364 S.W.3d 695, 704 (Mo. Ct. App. 2012). Thus, the Whites' lien was perfected when they obtained a judgment lien against the Property in May 2013.

Because the Deed of Trust was perfected first, the Whites had constructive notice of the Deed of Trust when they obtained the judgment lien over six years later. *See Meyer v. Ragar*, 935 S.W.2d 97, 99 (Mo. Ct. App. 1996) ("A judgment lien . . . gives the creditor priority over *subsequent* claims by placing a charge on the debtor's real property." (emphasis added)); Mo. Rev. Stat. § 443.035.2 (according priority to a later-in-time lienor which acquires its interest

"without notice of an *unrecorded* assignment of a security instrument" (emphasis added)).[3] Therefore, the Deed of Trust was senior to the Whites' judgment lien. And because the Whites can convey only the rights that they have, any interest the Whites conveyed to Timber Point after securing the Property with the judgment lien is necessarily subordinate to the Deed of Trust.

The Court cannot grant a declaratory judgment that Timber Point's claim had priority over any Defendant's. Because this claim fails as a matter of law, Count I is dismissed with prejudice.

### B. Count II states a claim for a declaratory judgment that U.S. Bank, not Bank of America and Millsap & Singer, P.C., had the only legal right to foreclose on the Property.

Count II seeks a declaratory judgment that, regardless of the Deed of Trust's priority, the Note was unsecured and so Millsap & Singer, P.C. had no legal authority to foreclose on the Property for Bank of America. If a promissory note and the accompanying deed of trust are split, then the note becomes unsecured and the holder of the note may not foreclose on the secured property to recover for the debt. *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. Ct. App. 2009). If the holder of the note transfers or assigns the note, then the deed of trust is automatically transferred or assigned as well. *Id.* (citing *George v. Surkamp*, 76 S.W.2d 368, 371 (Mo. 1934)).

Here, First Franklin originally held both the Note and the Deed of Trust. MERS transferred the Note and Deed of Trust for First Franklin to the Series 2007-FF2 Trust. The Third Amended Complaint alleges no further conveyances, though Bank of America claimed at the foreclosure sale that it held the Note.

---

[3] Timber Point argues that at the time it received the Property from McKinney, it had no actual or constructive notice of the Deed of Trust because of supposed flaws in the recorded assignment of the Deed of Trust from MERS to the Series 2007-FF2 Trust, and in the recorded appointment of successor trustee by the Series 2007-FF2 Trust to Millsap & Singer, P.C. Because the Deed of Trust itself imparts all of the required notice, the Court need not look to events that occurred after the Deed of Trust was recorded.

7

This chain of events does not establish that the Note became unsecured. Regardless of whether Bank of America held the Note, there are no allegations that the Deed of Trust was transferred separate from the Note, which is required for the Note to become unsecured. *See id.* Timber Point pleads in the alternative that even if Bank of America somehow procured the Note, the Note was still unsecured because the Deed of Trust remained vested in another party. However, the Deed of Trust would have automatically followed the Note. *See id.* Thus, the Third Amended Complaint does not establish that the Note was unsecured.

However, these allegations do support a declaratory judgment claim that Bank of America's foreclosure sale was defective because it did not hold the Note. Because Bank of America had no right to foreclose, Millsap & Singer, P.C. had no right to conduct a foreclosure sale on its behalf. Rather, First Franklin was the true beneficiary and last holder of the Deed of Trust, or else U.S. Bank as trustee for the Series 2007-FF2 Trust if that trust actually exists. Although these allegations may not be borne out by discovery, Count II states a claim.

None of Timber Point's complaints has alleged that Millsap & Singer, LLC was a party to the Deed of Trust or the Note. Insofar as Count II alleges claims against Millsap & Singer, LLC, such a claim is dismissed with prejudice.

## II. Timber Point's quiet title claim fails to request relief which the Court can possibly grant.

Count III seeks to quiet title in Timber Point. Timber Point seeks an affirmative adjudication that it holds title to the Property "against the claims of all defendants" (Doc. 108, at 17). Timber Point and the non-existent Series 2007-FF2 Trust, which purchased the Property at the foreclosure sale, each claim an interest in the Property.

Mo. Rev. Stat. § 527.150.1 creates a cause of action to quiet title by permitting "[a]ny person claiming any title, estate or interest in real property [to] institute an action against any

person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate." The plaintiff in a quiet title action must plead that its title is superior to the other parties', and "must prevail on the strength of its own title and not on any weakness in the title of the other party." *Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 203 (Mo. 1996) (per curiam).

Under Missouri law, when a foreclosure sale is set aside an equitable lien is created in favor of the winning bidder in the amount of the winning bid. *Williams v. Kimes*, 25 S.W.3d 150, 154, 156 (Mo. 2000). Here, the Series 2007-FF2 Trust submitted a winning bid for the Property through its trustee, U.S. Bank. Because the Series 2007-FF2 Trust does not exist, U.S. Bank was necessarily acting on its own behalf and the money it paid was its own. If the foreclosure sale is set aside, then U.S. Bank will have an equitable lien against the Property in the amount it paid at the sale. Timber Point does not indicate any way in which its own title is superior to U.S. Bank's equitable lien. Thus, even if the Court set aside the foreclosure sale, Timber Point would not have title to the Property free and clear as it requests.

Because Timber Point has not pleaded factual allegations sufficient for the Court to quiet title in its favor, the Court dismisses Count III against U.S. Bank without prejudice. *See also Barnes v. Fed. Home Loan Mortg. Corp.*, No. 5:12-CV-6062-DGK, 2013 WL 1314200, at *6 (W.D. Mo. Mar. 28, 2013).

Timber Point does not allege that either Millsap entity or Bank of America claims any title interest in the Property. Insofar as Count II alleges claims against the Millsap entities and Bank of America, such claims are dismissed with prejudice.

9
Case 6:13-cv-03449-DGK   Document 109   Filed 12/10/14   Page 9 of 15

### III. Timber Point is not entitled to a writ of right because U.S. Bank has a legitimate claim to the Property in the form of an equitable lien.

In Count IV, Timber Point petitions the Court for a common law writ of right to "perpetually bar[] defendants' claims to the real property in question" and to "direct[] the sheriff, marshal, or other government official[] as appropriate to safeguard plaintiff's title and possession of the property against all interference by each and every defendant." (Doc. 108, at 22). This Court has the authority to issue such a writ under the All Writs Act. *See* 28 U.S.C. § 1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.").

Missouri recognizes English common law predating "the fourth year of the reign of James the First" which is not contrary to any federal or state law. Mo. Rev. Stat. § 1.010. Before that year, which is 1607, *see Osborne v. Purdome*, 244 S.W.2d 1005, 1011 (Mo. 1951),[4] the courts of England recognized a writ of right. Joshua C. Tate, *Ownership and Possession in the Early Common Law*, 48 Am. J. Legal Hist. 280, 295–97 (2006); *see* Fed R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source . . . .").

A writ of right is generally a writ "used to protect a feudal tenant in the enjoyment of his freehold property by trial of the rights of the parties in the court of the manor." *Webster's Third New International Dictionary* 2641 (2002).[5] In its close form, apparently the form Timber Point requests here, the writ commands the sheriff to oust an interloper who is withholding full and free possession of land from its rightful owner. *Liter v. Green*, 15 U.S. (2 Wheat.) 306, 311 n.a (1817); *see* Tate, *supra*, at 296.

---

[4] "The date selected (1607) has reference to the first permanent English settlement in the new world." William L. Eckhardt, *Property*, 17 Mo. L. Rev. 398, 398–99 (1952).

[5] The "right" in "writ of right" refers not to a general legal right, but more specifically to a proprietary right in land. F.W. Maitland, *The History of the Register of Original Writs*, 3 Harv. L. Rev. 97, 109, 100 & n.1 (1889).

Here, U.S. Bank has an equitable lien on the Property by virtue of its purchase at the foreclosure sale. Therefore, the Court has no basis to perpetually bar U.S. Bank from asserting a claim to the Property. Because the Third Amended Complaint does not allege any other Defendant claims any interest in the Property, Timber Point's petition for a writ of right against all Defendants must be denied. Count IV is dismissed without prejudice.

## IV. Count V does not state a claim for fraud on the court because such a cause of action does not exist.

In Count V, Timber Point asserts a claim against U.S. Bank and the Millsap entities for fraud on the Circuit Court of Taney County and on the Taney County Recorder of Deeds. Timber Point alleges that two Millsap & Singer, LLC attorneys falsely represented in the deed conveyed at foreclosure that the Series 2007-FF2 Trust existed, that U.S. Bank was trustee of this nonexistent trust, and that this trust could have paid for the Property at the foreclosure sale. It alleges that another Millsap & Singer, LLC attorney made the same false statements in an affidavit submitted to the Circuit Court of Taney County. The Complaint alleges that these Millsap & Singer, LLC attorneys acted as agents for Millsap & Singer, P.C.

To state a claim of fraud, a plaintiff must allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of falsity of the representation or ignorance of its truth; (5) the defendant's intent that the representation be acted upon; (6) the plaintiff's ignorance of the falsity of the representation; (7) the plaintiff's reliance on the truth of the representation; (8) the plaintiff's right to rely on the representation; and (9) injury. *Powers v. Shore*, 248 S.W.2d 1, 5 (Mo. 1952). A fraud claim must be pleaded with particularity. Fed. R. Civ. P. 9(b).

The Third Amended Complaint fails on at least the sixth and seventh elements. It does not allege that U.S. Bank or either Millsap entity made any false representation that Timber Point

did not know was false. Nor does the Complaint allege that Timber Point has relied on any false representation. Because these unpled facts are essential to a claim of fraud, Count V does not state a claim upon which relief can be granted.

Timber Point resists this conclusion by arguing that fraud is not confined to a theory of misrepresentation or concealment. It argues that a cause of action vests when a defendant has made false statements to a court by filing false pleadings, affidavits, or other documents. However, the cases cited by Timber Point do not establish a *cause of action* for fraud on the court separate from fraudulent misrepresentation. Rather, those courts discussed and reprimanded fraud on the court in wholly different contexts. *See Sutter v. Easterly*, 189 S.W.2d 284 (Mo. 1945) (setting aside a judgment entered after the key witness at trial offered perjured testimony); *Johnson v. Saddler*, 322 S.W.3d 544, 547 (Mo. Ct. App. 2010) (in a case where the plaintiff was awarded a default judgment on claims of fraudulent misrepresentation and concealment but the evidence did not support those claims, affirming the judgment because the fraud could be upheld on slander of title grounds); *Rea v. Moore*, 74 S.W.3d 795, 800–01 (Mo. Ct. App. 2002) (per curiam) (reviewing a sanction imposed for committing fraud on the court). Timber Point cites no Missouri case, much less a Supreme Court of Missouri case, *see Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011), sustaining its claim of fraud outside of misrepresentation and concealment that is not predicated on slander of title. Because this cause of action does not exist, the Court dismisses Count V with prejudice.

Count V alternatively requests a declaratory judgment that U.S. Bank and the Millsap entities committed fraud on the court. A declaratory judgment is appropriate only for disagreements that "have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be

12
Case 6:13-cv-03449-DGK   Document 109   Filed 12/10/14   Page 12 of 15

achieved in deciding them." *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 239, 244 (1952) (rejecting a proposed declaratory judgment that a company's movement of film and newsreels within Utah constituted interstate commerce, because such a declaratory judgment was insufficiently concrete and divorced of any particular context); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41 (1937) (discussing declaratory judgments in the context of the constitutional requirement of an actual case or controversy).

Here, a declaratory judgment that U.S. Bank or the Millsap entities committed fraud on the court does not fix or settle any identifiable rights or legal relations. The Court cannot foresee what effect such a declaration might have on the parties, and discerns no useful purpose to granting it. *See Wycoff*, 344 U.S. at 244. Accordingly, Count V is dismissed without prejudice to the extent it seeks a declaratory judgment that a Defendant committed fraud on the court.

### V. The Third Amended Complaint states a claim for slander of title.

Count VI alleges that all Defendants recorded false instruments, thereby committing a slander of title. Specifically, it alleges MERS, at the behest of Bank of America, recorded a false mortgage assignment conveying First Franklin's beneficiary interest in the Deed of Trust to the Series 2007-FF2 Trust. It alleges U.S. Bank, as trustee for the Series 2007-FF2 Trust, recorded a false appointment of successor trustee, appointing Millsap & Singer, P.C. as successor trustee to the Deed of Trust. Finally, it alleges the Millsap entities recorded a false deed of trust conveying the Property from Millsap & Singer, P.C. as trustee for the Series 2007-FF2 Trust to U.S. Bank after the foreclosure sale.

To establish a claim for slander of title under Missouri law, a complaint must allege the defendant: (1) published false words; (2) such publication was done maliciously; and (3) such publication resulted in pecuniary injury to the plaintiff. *Tongay v. Franklin Cnty. Mercantile*

*Bank*, 735 S.W.2d 766, 770 (Mo. Ct. App. 1987). This cause of action must be pleaded with particularity. *Lukefahr v. U.S. Bank, N.A.*, No. 1:13-CV-151 JAR, 2014 WL 1648819, at *4–5 (E.D. Mo. Apr. 23, 2014); *see* Fed. R. Civ. P. 9(b).

First, the Third Amended Complaint alleges that all of these recorded instruments were false. The Series 2007-FF2 Trust is alleged to not exist, which makes all three documents false. Without a Series 2007-FF2 Trust, MERS could not have recorded a true assignment of the deed of trust to it. *See Allmon v. Gatschet*, 437 S.W.2d 70, 74 (Mo. 1969) ("[A] valid deed of conveyance requires a grantee in [existence] who is capable of taking and holding title to the property at the time of the conveyance . . . ."). Similarly, the appointment of successor trustee by a purported Series 2007-FF2 Trust trustee had to be a false document. Finally, the deed of trust conveyed at the foreclosure sale from the purported successor Series 2007-FF2 Trust was a false document.

The second element requires that the false words have been maliciously published, meaning "the representation not only was without legal justification or excuse, but was known to be false (i.e., not innocently or ignorantly made)." *Johnson*, 322 S.W.3d at 547. The Third Amended Complaint alleges that each Defendant knew the recorded instruments were false but had no legal justification to record them nonetheless.

On the third element, Timber Point alleges that the documents have created a cloud upon title to the Property, which plausibly has caused Timber Point pecuniary harm by decreasing the value of the Property, to which Timber Point might hold title.

Because each of the elements of this claim is satisfied with regard to each Defendant, Count VI states a claim.

## Conclusion

For the foregoing reasons, upon the Court's own motion: Count I is dismissed with prejudice against all Defendants; Count II is dismissed with prejudice against Millsap & Singer, LLC; Count III is dismissed without prejudice against U.S. Bank and with prejudice against Bank of America, Millsap & Singer, P.C., and Millsap & Singer, LLC; Count IV is dismissed without prejudice against all Defendants; and Count V is dismissed with prejudice against all Defendants insofar as it sets out a claim for fraud on the court, and without prejudice against all Defendants insofar as it seeks a declaratory judgment.

**IT IS SO ORDERED.**

Date:   December 10, 2014   　　　　　　　　　　 /s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT