IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TIMBER POINT PROPERTIES III, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-3449-CV-S-DGK |
| | ) | |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART THE PARTIES' MOTIONS TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff Timber Point Properties III, LLC ("Timber Point"), has settled this property dispute litigation with Defendants. Now before the Court is Timber Point's motion to enforce the settlement agreement (Doc. 161) and Defendants' cross-motion to enforce (Doc. 165). For the reasons below, each motion is GRANTED IN PART.

### Background

This case centers on a piece of property in Branson, Missouri, that Timber Point owned. Defendant Bank of America, N.A. foreclosed on the property, with the aid of the other Defendants. Timber Point sued to regain full title to the property, contesting the process that led to the foreclosure.

Before discovery concluded, the parties negotiated a settlement. They signed a Memorandum of Settlement (Doc. 165-1) that contained the general terms that the final settlement agreement would comprise. In particular, the parties agreed that they would "execute a Settlement Agreement and Release drafted by Defendants including a mutual confidentiality provision, a non-disparagement provision, release by Plaintiff of all claims against all Defendants, [and] dismissal of the federal case with prejudice."

Defendants submitted to Timber Point their latest draft Settlement Agreement and Release of Claims (Doc. 165-4). Timber Point claims it never agreed to four terms contained in this draft: (1) a provision granting damages and fees in any action to enforce the settlement agreement (Paragraph 3.I); (2) the release of claims against Defendants (Paragraph 3.D); (3) the confidentiality provision (Paragraph 3.K); and (4) the non-disparagement clause (Paragraph 3.L). Defendants concede Timber Point never agreed to Paragraph 3.I. However, they refuse to change any of the contested language.

## Standard

A district court possesses the inherent power to enforce an unambiguous settlement agreement. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). "[A] court may enforce [a] settlement agreement that contemplates the execution of documents at a later time," *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006), including ordering specific performance where a settlement was reached but a release was not signed, *Byrd v. Liesman*, 825 S.W.2d 38, 41 (Mo. Ct. App. 1992).

In a diversity case like this one, the court must construe the agreement according to state law. *Id.* "In Missouri, interpreting a settlement or release agreement is a question of law, and the agreement is 'interpreted according to the same principles that govern the interpretation of any other type of contract.'" *Harper Enters., Inc. v. Aprilia World Serv. USA, Inc.*, 270 F. App'x 458, 460 (8th Cir. 2008).

## Discussion

Timber Point now moves the Court to enforce the Memorandum of Settlement by striking the four contested clauses from the draft Settlement Agreement and Release. Defendants cross-

move the Court to enforce the Memorandum of Settlement, arguing that its general terms are consistent with the draft Settlement Agreement and Release.

The parties do not dispute that the Memorandum of Settlement is an enforceable contract. In that contract, the parties agreed to "execute a Settlement Agreement and Release drafted by Defendants," including certain provisions. The issue is whether Defendants have fulfilled this obligation by drafting a valid Settlement Agreement and Release. If they have, then the Court will order Timber Point to fulfill its contractual obligation to execute it. *See Chaganti & Assocs.*, 470 F.3d at 1221. If they have not, then the Court will order Defendants to fulfill *their* contractual obligation by executing a new, valid settlement agreement and release that conforms with the outline in the Memorandum of Settlement.

Timber Point argues that the Settlement Agreement and Release, as drafted, is an invalid contract on three grounds. First, it includes provisions that Timber Point never agreed to. Second, it forfeits rights held by other entities. Third, it allegedly violates the Missouri Rules of Professional Conduct.

**I. Defendants may not insert a provision that Timber Point did not agree to.**

Paragraph 3.I of Defendants' draft agreement entitles a party to recover damages, fees, and costs if it prevails in an action to enforce the agreement. Timber Point asserts that it never agreed to that provision. The Memorandum of Settlement discussed several material terms of settlement. The issue is whether the draft Settlement Agreement and Release strayed from those material terms.

Under Missouri law, a contract is not formed unless the parties have mutually assented to all material terms, meaning there was a "meeting of the minds." *Chaganti & Assocs.*, 470 F.3d at 1221. "A mutual agreement is reached when 'the minds of the contracting parties [] meet

3

upon and assent to the same thing in the same sense at the same time.'" *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. Ct. App. 2012).

Here, Defendants conceded after the fact that Timber Point never agreed to Paragraph 3.I. Therefore, there was no objective intent by the parties at the time they entered the Memorandum of Settlement to include such a provision. *See Chaganti & Assocs.*, 470 F.3d at 1221. The Court will not enforce this provision. *See also Barry*, 172 F.3d at 1014–15 (holding, under identical Minnesota law, that settling shareholders who failed to reserve certain claims in the parties' oral settlement agreement could not later integrate such a reservation into the final written settlement agreement).[1]

### II. Paragraph 3.D requires only the parties to forfeit rights.

Paragraph 3.D requires Timber Point to release not only its claims against Defendants, but also claims held by its "agents," "representatives," "insurers," and the like. Timber Point complains that it cannot be forced to release claims held "by third parties over whom [it] has no control." Defendants respond that the release provision aims solely "to prevent Plaintiff, or any entity that may have any rights through the Plaintiff, from asserting any claims now or in the future against the Defendants pertaining to the subject matter of this litigation." In other words, Defendants disclaim that the draft Settlement Agreement and Release compromises third parties' claims. The Court must thus determine whether either interpretation reflects a mutuality of agreement.

The Memorandum of Settlement reflects the parties' objective intent for the Settlement Agreement and Release. That memorandum identified as a material settlement term the "release by Plaintiff of all claims against all Defendants." It does not require any other party to release

---

[1] Because Paragraph 3.J provides for invalid portions of the Settlement Agreement and Release to be severable, the Court can strike Paragraph 3.I without jeopardizing the entire contract.

4

claims.  Further, the Settlement Agreement and Release was to be signed by only the parties to this lawsuit.  Therefore, the parties' mutual agreement was for only "Plaintiff" to be bound by Paragraph 3.D.  And by "Plaintiff," the Court finds the parties meant not only Timber Point, but also all entities that have rights through it, because no party argues that the usual principles of agency are inapplicable.  *See generally State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. 1993) (citing Restatement (Second) of Agency § 14 (1958)).

The Court will enforce this provision as validly written.

### III. The Settlement Agreement and Release does not violate the Missouri Rules of Professional Conduct.

Finally, Timber Point argues that parts of the Settlement Agreement and Release violate Missouri Supreme Court Rule 4, also known as the Missouri Rules of Professional Conduct.  "[A] contract or transaction prohibited by law is void."  *White v. Med. Review Consultants, Inc.*, 831 S.W.2d 662, 665 (Mo. Ct. App. 1992) (Fenner, J.).  The Missouri Rules of Professional Conduct have the force of law.  *In re Ellis*, 221 S.W.2d 139, 141 (Mo. 1949).  Therefore, the Settlement Agreement and Release is void if it violates a Rule of Professional Conduct.  *See also Eng v. Cummings, McClorey, Davis & Acho, PLC*, 611 F.3d 428, 432 (8th Cir. 2010) (applying Missouri law).

Timber Point argues that two provisions are ethically compromised: Paragraph 3.K, a confidentiality clause, and Paragraph 3.L, a non-disparagement clause.

#### A. The confidentiality clause does not violate the Rules of Professional Conduct.

Paragraph 3.K prohibits the parties from disclosing any discovery accumulated during this action and the terms of the Settlement Agreement and Release.  This provision contains a number of exceptions; for instance, a party may make an otherwise prohibited disclosure if so

5

ordered by a governmental authority. Timber Point believes Paragraph 3.K violates Missouri Rule of Professional Conduct 3.4(f), which states:

> A lawyer shall not:
> . . .
> **(f)** request a person *other than a client* to refrain from voluntarily giving relevant information to another party unless:
> **(1)** the person is a relative or an employee or other agent of a client; and
> **(2)** the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

(Emphasis added).

Paragraph 3.K does not violate Rule 3.4(f). No "lawyer" is "request[ing]" any party to refrain from divulging information here. The parties themselves negotiated and agreed to a mutual confidentiality provision, as reflected by the parties' signatures on the Memorandum of Settlement. The attorneys presumably counseled the parties in making this decision, but such was not unlawful; Rule 3.4(f) proscribes only requests to persons "other than a client." The sole case Timber Point cites, from another jurisdiction, is inapposite for this reason. *See Ky. Bar Ass'n v. Unnamed Atty.*, 414 S.W.3d 412, 418 (Ky. 2013) (holding that an attorney had violated Kentucky's analog to Rule 3.4(f) because he induced a *non-client* to contractually agree to refrain from revealing certain facts).

Timber Point states that it contacted the Missouri Supreme Court's Legal Ethics Counsel about Paragraph 3.K, and its staff was "unequivocal" that this provision abets "conduct that is prejudicial to the administration of justice," a violation of Rule 8.4(d). The opinions of the Legal Ethics Counsel are "not binding." Mo. Sup. Ct. R. 5.30(c). This opinion is not even persuasive, as Timber Point fails to elaborate the substance of the Legal Ethics Counsel's opinion. Therefore, the Court accords no deference to this opinion.

Finally, Timber Point's counsel argues that he has an ethical obligation under Rule 8.3(a) to report professional misconduct by fellow members of the bar—for example, the filing of false affidavits—but that Paragraph 3.K prevents him from doing so. Paragraph 3.K requires the parties to keep as confidential the discovery and the settlement terms; it is silent on reporting misconduct generally. Timber Point fails to indicate why its counsel could not report misconduct while refraining from voluntarily submitting discovery accumulated during this litigation. The Court rejects this speculative argument. *Cf. Eng*, 611 F.3d at 435 (refusing to enforce a contract that was *categorically* unenforceable).

For these reasons, the Court will enforce Paragraph 3.K.

### B. Timber Point's concerns about being restricted from releasing public information are speculative.

Paragraph 3.L prohibits Timber Point from making negative or disparaging statements against Defendants. Timber Point believes that Paragraphs 3.K and 3.L unethically prevent its attorney from releasing information that is already in the public domain.

Missouri Rule of Professional Conduct 5.6(b) prohibits a lawyer from "participat[ing] in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy." Several states have interpreted their versions of this rule to bar settlement agreements from prohibiting a party's lawyer from disclosing information that is publicly available or that would be available through discovery in other cases. Ill. State Bar Ass'n Op. 12-10, 2013 WL 683530, at *2 (Feb. 12, 2013) (collecting opinions).

Timber Point fails to establish that Paragraphs 3.K and 3.L facially prohibit the release of public information. The Court will not strike these provisions simply because Timber Point can envision a scenario in which the Settlement Agreement and Release, as applied, might contravene the Rules of Professional Conduct. If such an instance arises, Timber Point will have

7
Case 6:13-cv-03449-DGK   Document 172   Filed 07/20/15   Page 7 of 8

Finally, Timber Point's counsel argues that he has an ethical obligation under Rule 8.3(a) to report professional misconduct by fellow members of the bar—for example, the filing of false affidavits—but that Paragraph 3.K prevents him from doing so. Paragraph 3.K requires the parties to keep as confidential the discovery and the settlement terms; it is silent on reporting misconduct generally. Timber Point fails to indicate why its counsel could not report misconduct while refraining from voluntarily submitting discovery accumulated during this litigation. The Court rejects this speculative argument. *Cf. Eng*, 611 F.3d at 435 (refusing to enforce a contract that was *categorically* unenforceable).

For these reasons, the Court will enforce Paragraph 3.K.

### B. Timber Point's concerns about being restricted from releasing public information are speculative.

Paragraph 3.L prohibits Timber Point from making negative or disparaging statements against Defendants. Timber Point believes that Paragraphs 3.K and 3.L unethically prevent its attorney from releasing information that is already in the public domain.

Missouri Rule of Professional Conduct 5.6(b) prohibits a lawyer from "participat[ing] in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy." Several states have interpreted their versions of this rule to bar settlement agreements from prohibiting a party's lawyer from disclosing information that is publicly available or that would be available through discovery in other cases. Ill. State Bar Ass'n Op. 12-10, 2013 WL 683530, at *2 (Feb. 12, 2013) (collecting opinions).

Timber Point fails to establish that Paragraphs 3.K and 3.L facially prohibit the release of public information. The Court will not strike these provisions simply because Timber Point can envision a scenario in which the Settlement Agreement and Release, as applied, might contravene the Rules of Professional Conduct. If such an instance arises, Timber Point will have

adequate remedies at that time. At this juncture, the Court will enforce Paragraphs 3.K and 3.L. *Cf. Eng*, 611 F.3d at 435.

## Conclusion

Except as noted above, Defendants have performed their obligation under the Memorandum of Settlement to draft a valid Settlement Agreement and Release, so per the terms of the Memorandum of Settlement, the parties shall execute that draft. Timber Point's motion to enforce the Memorandum of Settlement (Doc. 161) is GRANTED IN PART. Defendants' cross-motion to enforce the Settlement Agreement and Release (Doc. 165) is GRANTED IN PART. The Court will now enforce the Memorandum of Settlement by ordering each party to execute the Settlement Agreement and Release, with the exception of Paragraph 3.I. The parties shall do so within twenty-one days.

As the parties have settled all claims, the Clerk of the Court is directed to close this case. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii).

**IT IS SO ORDERED.**

Dated:  July 20, 2015   /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT